ESTATE OF Carol W. BECKER and Frederick R. Becker, Plaintiffs–Appellants,

v.

EASTMAN KODAK COMPANY and Kodak Retirement Income Plan Committee, Defendants–Appellees.

No. 153, Docket 96–7108.

United States Court of Appeals, Second Circuit.

Argued Nov. 8, 1996.

Decided July 18, 1997.

Arthur A. Marrapese, III, Rochester, NY (Charles S. Carra, Damon & Morey, LLP, Buffalo, NY, of counsel), for Plaintiffs–Appellants.

Eugene D. Ulterino, Rochester, NY (Stephanie M. Caffera, on the brief, Nixon, Hargrave, Devans & Doyle, LLP, Rochester, NY, of counsel), for Defendants–Appellees.

Before: OAKES, LEVAL and PARKER, Circuit Judges.

LEVAL, Circuit Judge:

The estate of Carol W. Becker and Frederick R. Becker (collectively, "plaintiffs") appeal from a decision of the United States District Court for the Western District of New York, Michael A. Telesca, *Judge,* granting summary judgment in favor of defendants Eastman Kodak Company and Kodak Retirement Income Plan Committee (collectively "Kodak") and dismissing plaintiffs' claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The complaint alleges that Kodak violated ERISA by issuing a faulty Summary Plan Description ("SPD") and providing Carol Becker ("Becker") with inadequate information about her retirement benefits options. The district court held that

Kodak's SPD complied with ERISA's disclosure requirements and that Kodak did not give Becker incomplete or misleading information.

Plaintiffs contend that (1) Kodak's SPD did not adequately describe the consequences of dying before the "effective date" of retirement, (2) Kodak did not timely update its SPD to describe the addition of a new "lump sum" retirement benefit, and (3) during an individual meeting in March 1991, a Kodak benefits counselor (Jean Ticen) gave Becker incomplete and misleading information about her retirement options.

Because we find that the SPD did not make clear the dire consequences of an employee's death after the election to retire, but before the effective date of retirement, and that Ticen's advice to Becker further obscured this potential danger, we vacate the judgment of the district court and remand for further proceedings.

*Background*

Becker worked for Kodak for sixteen years and participated in the Kodak Retirement Income Plan (the "Plan"). On January 1, 1989, she became eligible for early retirement under the Plan's "55/10" rule, which allows employees who have reached the age of 55 with at least ten years service to retire before the normal retirement age of 65.

Prior to 1990, the Plan paid retirement benefits only in the form of an annuity. On April 19, 1990, Kodak announced in its internal newsletter, *Kodakery,* that as of September 1, 1990, retiring employees could elect to receive their retirement benefits in a one-time "lump sum."

In August 1990, Kodak mailed personalized estimates of retirement benefits to all employees eligible for retirement, including Becker. These estimates set forth the amount that each employee was then entitled to receive, calculated both as an annuity and as a lump sum. In September and October 1990, Kodak held a series of presentations about retirement benefits for all employees eligible for retirement. It is disputed whether any meeting Becker attended included meaningful discussion of the lump sum benefit.

Suffering from cancer, Becker took short-term disability leave on April 20, 1990. Kodak provided short-term disability benefits for up to one year. When it became apparent that Becker could not return to work before the expiration of her short-term benefits, she and her daughter, Elizabeth Ann Bryce, met on March 15, 1991 with benefits counselor Jean Ticen to discuss Becker's options and whether she should retire or take long-term disability status. Bryce tape recorded a portion of this meeting because her mother had difficulty concentrating on account of her illness, and wished to hear it again at home.

Ticen told Becker that the monthly benefit under long-term disability would be larger than the monthly retirement benefit to which she was then entitled, and that her retirement benefit would grow if she deferred retirement. She also told Becker that "[t]here may be some point at which the retirement income may be higher than what you receive on disability, so that would be an appropriate time for you to switch from disability to retirement." In short, Ticen's advice seemed to suggest that it was to Becker's advantage to elect disability status rather than retirement.

During this meeting, Ticen never mentioned the option of retiring with the lump sum benefit. Becker did not tell Ticen that she was suffering from a terminal illness. On several occasions, Ticen referred to decisions and benefits that would arise several years in the future. At one point, Becker asked Ticen: "If I take long term, can I take retirement any time I feel like it?" Ticen responded "Right."

After the meeting, Becker elected to postpone her retirement and take long-term disability benefits. The election form, signed by Becker on March 15, 1991, contains an explicit comparison of the monthly benefits available under the disability and retirement packages, but does not mention the lump sum option.

Around October 20, 1991, after her condition had deteriorated, Becker decided to re-

tire and asked Ticen for information about the lump sum option. Ticen told her that she would not receive her lump sum if she died before the effective date of her retirement. Becker then tried to make her retirement retroactive to October 1, 1991. Ticen told her that the Plan did not permit retroactive retirement, but agreed to expedite her papers and to make her retirement effective November 1, 1991, the earliest possible date.

Becker died on October 29, 1991. As a result, she and her husband were ineligible to receive her lump sum payment, which would have amounted to about $212,620. Instead, on November 1, 1991, Mr. Becker became eligible for "Survivor Income Benefits," available to surviving spouses of "vested" Plan participants who die before retiring, which are monthly payments equal to 20–30% of the amount that would have been payable as a retirement annuity. These benefits give Mr. Becker a monthly payment of $103.42, a far smaller benefit than the plaintiffs would have received had Becker retired before her death.

Plaintiffs brought this action alleging that Kodak violated three sections of the ERISA statute. The complaint alleged that Kodak violated 29 U.S.C. § 1022(a)(1) by providing an inadequate SPD, violated § 1024 by failing to issue a statement of material modification ("SMM") describing the lump sum option, and violated § 1104 by failing to provide Becker with complete and correct information about her options under the Plan. The complaint also alleged that Kodak's failure to explain its benefits adequately caused Becker's failure to retire before her death and the consequent loss of vested benefits. The parties filed cross-motions for summary judgment.

The district court granted Kodak's motion for summary judgment. Although noting that the SPD, unlike the Plan itself, did not state explicitly that "[t]he lump sum will not be paid if the Participant dies before the date on which the lump sum would be payable," the court found that, read as a whole, the SPD "sufficiently apprise[s] plan participants and beneficiaries that an employee who dies before the effective date of his or her retirement will not receive vested pension bene-

fits." The court thus held that the SPD did not violate § 1022 because it provided Becker reasonable notice that her estate would receive no retirement benefits if she died before retiring.

The court also rejected plaintiffs' claim that Kodak violated § 1024 by failing to issue a timely SMM announcing the lump sum option and describing the circumstances under which participants might forfeit it. The court construed the lump sum option as changing only the form of retirement benefits, not eligibility for obtaining them, and found that Becker had received notice of the new alternative.

Finally, the court ruled that Ticen had not given Becker incomplete or misleading information about her benefits options and that Kodak had not breached its fiduciary duty under ERISA. Finding that Ticen was under no obligation to inquire about Becker's condition or to provide personalized advice based on what she knew or suspected about that condition, the court held that Ticen had met her sole duty by explaining to Becker the "available options under the applicable Kodak benefit plan." As Becker "was provided with all the pertinent information required to make an informed decision regarding which benefits option to select," the court granted Kodak's motion for summary judgment.

## Discussion

As noted above, the arguments advanced by plaintiffs on appeal include (1) that the SPD did not reasonably describe the circumstances under which retirement benefits might be lost, and (2) that Ticen gave Becker misleading advice about the retirement option. Finding that the SPD and the advice given by Ticen, taken together, amounted to materially misleading information, we reverse the district court's ruling on that ground alone, and therefore do not consider whether either the SPD or Ticen's advice, taken separately, would justify relief.

### A. Kodak's Duties Under ERISA

█ An ERISA plan administrator must furnish its participants and beneficiaries with

an SPD "written in a manner calculated to be understood by the average plan participant" and "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). An SPD "shall contain ... the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). In assessing the adequacy of an SPD, we consider the document as a whole. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 981 (5th Cir.1991).

ERISA also requires a plan fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a). We have observed that this statute "does not enumerate or elaborate in any detail on the duties owed by a fiduciary to a plan beneficiary" and that courts have therefore "been called upon to define the scope of a fiduciary's responsibilities." *Pocchia v. NYNEX Corp.*, 81 F.3d 275, 278 (2d Cir.), *cert. denied*, — U.S. ——, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996). We have held that a plan breaches its fiduciary duty by making "affirmative material misrepresentations ... about changes to an employee pension benefits plan." *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 669 (2d Cir.1994)(internal quotation marks omitted). Although we have not previously considered what duties a plan owes a participant who requests information to assist her in choosing between retirement and long-term disability, we noted in *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 29 (2d Cir.1995)(per curiam), that a departing employee might prevail at trial on an ERISA fiduciary claim based on the failure of his plan administrator to inform him that his medical insurance was about to lapse and that he could exercise continuation rights.

Courts of appeals in other circuits have held that ERISA fiduciaries must provide complete and accurate information in response to beneficiaries' questions about plan terms and/or benefits. In *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 748–49 (D.C.Cir. 1990), plaintiff contacted his insurance company about retaining coverage after his employer had cancelled its group health insurance policy. The company informed plaintiff that he could not "continue" his group policy, and did not volunteer the information that he was entitled to "convert" that policy to an individual policy. *Id.* at 749. As a result, plaintiff was left without coverage. *Id.* The district court found that plaintiff had not specifically asked whether he could "convert" his policy and that the company had no fiduciary duty to inform him of that option. *Id.* The court of appeals reversed. Drawing on common-law principles of trusts, the court held that the company had not only a duty not to misinform, but also "a duty upon inquiry to convey to a lay beneficiary ... correct and complete material information about his status and options." *Id.* at 750.

In *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3rd Cir.1993), the widow of a plan participant asked her husband's employer, while COBRA election was still possible, whether she was entitled to a death benefit. The employer, which had previously sent letters informing the husband and wife of their COBRA option, answered that there was no death benefit, and did not mention COBRA benefits for substantial medical bills incurred by her husband. The court ruled that if the employer was acting in its fiduciary capacity, its "failure to advise her of the available benefits might be found to be a breach of fiduciary duty despite the fact that her inquiry was limited to the availability of a death benefit." *Id.* at 1302. *See also Switzer v. Wal–Mart Stores, Inc.*, 52 F.3d 1294, 1299 (5th Cir.1995)(Upon receiving an inquiry from a beneficiary, a plan administrator "has a fiduciary obligation to respond promptly and adequately in a way that is not misleading."); *Electro–Mechanical Corp. v. Ogan*, 9 F.3d 445, 451 (6th Cir.1993) ("ERISA imposes a duty upon fiduciaries to respond promptly and adequately to employee-initiated inquiries regarding the plan or any of its terms."); *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993) (Under ERISA, "[f]iduciaries must also communicate material facts affecting the interests of beneficiaries.").

## B. Kodak's Conduct

■ Plaintiffs argue that Kodak's SPD was deficient because it did not explain properly that a participant who dies before the "effective date" of her retirement is ineligible for the lump sum payment. They note that the complete Plan document states plainly in § 11.08(a) that "[t]he lump sum will not be paid if the Participant dies before the date on which the lump sum would be payable." They contend that the SPD did not make sufficiently clear that the Plan will not pay the retirement benefit if a participant dies before the "effective date" of her retirement.

Plaintiffs are correct in their assertion that the documents circulated by Kodak to announce the lump sum payment option do not state explicitly that the lump sum will not be paid if the participant dies before retirement. Moreover, the SPD itself does not contain a single, distinct announcement that a participant loses vested pension benefits if she dies before retirement, or that an employee's retirement election has no effect if she dies before the "effective date" of her retirement.

Kodak argues that the SPD, taken as a whole, makes clear the consequences of death prior to the effective date of retirement. It contends that the section of the SPD entitled "Survivor Income Benefits" informs participants that only limited benefits are available to their survivors if the participants "die after becoming vested under [the Plan] and before [they] retire," and that this section also makes clear that these benefits are not *retirement* benefits. Kodak further notes that the SPD indicates that survivors of retired participants receive a different package, called a "joint and survivor" option, which provides them with 50% of the deceased participant's retirement benefits. These provisions of the SPD, it argues, inform participants adequately that they will receive retirement benefits only if they survive until their effective dates of retirement.

Taken together, these provisions arguably reveal that retirement benefits are payable only if the participant retires before dying. But the SPD never explicitly defines the concept of taking retirement. It states that "[t]he effective date of retirement is always the first of a month." It also makes clear that "[r]etirement benefits are payable on your effective date of retirement and at the beginning of each month after that." But these statements do not tell participants how retirement is perfected, or what they must do to avoid the risk of losing vested retirement benefits.

Although the SPD perhaps implies that an employee "retires" only by filling out a retirement election form *and* surviving until the effective date of retirement, it does not state this explicitly. The SPD does not make clear that the effective date is always the first of the month *following* the employee's election. Thus, an employee electing to retire on March 2 might think that the effective date of her retirement was March 1, rather than April 1. Under these circumstances, the employee might reasonably believe that she had retired—and was thus eligible for retirement benefits—upon submitting an election to retire.

In short, the SPD does not explain that an employee has not "retired," within the meaning of the Plan, until after she has made her election, complied with necessary formalities, and survived until the "effective date" of retirement. Nor does the SPD explicitly define that term to mean the first day of the month *after* an employee's election to retire. As a result, it is questionable whether the SPD clearly alerts participants to the fact that an employee who elects to retire but dies before the first day of the next month loses her vested retirement benefits. For this reason, we question whether the SPD adequately informs an "average plan participant" of an important circumstance "which may result in . . . loss of benefits."

■ We recognize that an SPD need not "anticipate every possible idiosyncratic contingency that might affect a particular participant's or beneficiary's status." *Lorenzen v. Employees Retirement Plan of the Sperry & Hutchinson Co.,* 896 F.2d 228, 236 (7th Cir. 1990) (Posner, C.J.). We do not believe, however, that the possibility of death in the period between the election of retirement and the effective date of retirement is such a remote or "idiosyncratic" contingency. Indeed, the plan in *Lorenzen* specifically ad-

vised participants that death "either before retirement or after retirement but before benefits begin" would reduce the benefits payable to a "spouse or other beneficiary." *Id.* at 235. Nevertheless, because the deficiencies of the SPD do not stand alone in this case, we need not—and expressly do not—rule that the SPD was insufficient as a matter of law.

Regardless whether the SPD was, by itself, so ambiguous and incomplete as to violate § 1022(b), we find that benefits counselor Ticen exacerbated the lack of clarity inherent in the SPD and thereby provided Becker with materially misleading information. During their meeting, Becker asked: "If I take long term, can I take retirement anytime I feel like it?" Ticen responded "Right." Particularly given the SPD's confusing message concerning the mechanics and timing of the election to retire, Ticen's response could easily have led Becker to believe mistakenly that she could retire at any time, effective immediately or retroactive to the first of the month.

Taking these circumstances together, we conclude that Kodak breached its fiduciary duty to provide Becker with complete and accurate information about her retirement options. Plaintiffs are entitled to a finding in their favor on that issue. We therefore vacate the judgment of the district court. We do not, however, direct the entry of judgment for plaintiffs because there remains the question of causation. We remand for the district court to determine whether the misleading communication resulting from Ticen's answer and the SPD caused Becker to delay electing her retirement.

*Conclusion*

We vacate the judgment of the district court and remand for further proceedings as set forth above.