Gladys **MUNCH**, Plaintiff,

v.

**ABC–NABET RETIREMENT TRUST PLAN, and Board of Trustees of ABC–Nabet Retirement Trust Plan, Defendants.**

No. 98 Civ. 6624(LBS).

United States District Court, S.D. New York.

Feb. 23, 1999.

Brian A. Raphan, Druckman, Raphan & Sinel, New York City, for Plaintiff.

Nicholas F. Lewis, Sturm & Perl, New York City, for Defendants.

## MEMORANDUM AND ORDER

SAND, District Judge.

Plaintiff, Gladys Munch, brought this action against the Defendants, ABC–NABET Retirement Trust Plan (the "Plan") and its Board of Trustees (the '"Board"), alleging that she is a designated beneficiary of a retirement trust pension established for Louis Castagna and is therefore entitled to benefits under the plan. Presently before the Court is the Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief may be granted. For the reasons set forth below, Defendants' Motion is granted but Plaintiff shall have thirty days to file an Amended Complaint reasserting her claim for breach of fiduciary duty.

## II. BACKGROUND

The following facts are not in dispute.

ABC, through agreement with NABET, the union that represents certain of ABC's technical employees, agreed to establish a defined benefit pension fund that was to be jointly administered by ABC and NABET. Over a period of years, ABC made contributions into the fund for the purpose of providing pension benefits for its employees and their families. ABC made contributions on behalf of Mr. Louis Castagna, an employee of ABC for more than twenty years.

Article 3 of the Plan text covers qualified joint and survivor annuities for participants who are married. Section 3.01 states that such annuities "provide[ ] a reduced lifetime benefit for a married participant plus a lifetime benefit for his (or

her) spouse equal to 50% of the Participant's benefit, commencing after the death of the Participant." (Plan § 3.01(A), at 21.[1]) Section 3.02 governs death benefits and provides that "if an active participant ... dies after having attained a vested interest in the Plan after attaining his earliest retirement age but prior to Retirement Payments commencing, his Spouse shall receive Retirement Payments for life in the form of a spousal benefit under a Qualified Joint and Survivor Annuity." (Plan § 3.02, at 23.)

Article 4 governs optional benefit forms other than the qualified joint and survivor annuity detailed in Article 3. (*See* Plan § 4.01, at 25.) Section 4.01(a) contains the following restrictions regarding when optional plans take effect:

> A participant may elect an optional form of benefit only if such election is made by the earlier of ... (1) year prior to the annuity commencement date ... [and] (1) year prior to the Participant's Normal Retirement Date[.]
>
> In order to be effective, the Participant must ratify his prior election of an optional form of benefit any time within the 90 day period prior to his annuity commencement date and obtain his spouse's consent.

(Plan § 4.01(a), at 25.) The Plan provides for three specific optional benefit packages, including a joint and survivor annuity, an annuity with 120 monthly payments "guaranteed," and a stream of level payments that take Social Security income into account. (*See* Plan § 4.01(c), at 26.)

Section 4.03 is entitled "Payment After Participant's Death" and states the following:

> If a Participant dies before payment of his Retirement Payments begin, then the total Retirement Payments must be distributed in full within five (5) years from the date of the Participant's death; provided, however, than any portion of such Retirement Payments payable to a surviving Spouse or Beneficiary may be distributed over the life of such surviving Spouse or Beneficiary....

(Plan § 4.03, at 27.)

In June 1996, Mr. Castagna selected the optional plan "Annuity with 120 Monthly Payments Guaranteed." (Plan § 4.01(c)(2), at 26.) The plan describes that option as providing "[r]educed monthly payments to him during his life with 120 monthly payments guaranteed[.] The balance of the guaranteed payments, if there be any to be made after the death of the Participant, shall be made to his Beneficiary." (*Id.*) Mr. Castagna, who was not married, named Plaintiff as his beneficiary. Mr. Castagna died in December 1996, only six months after his election, while still an employee at ABC and an active participant in the Plan. The Board refused to pay Plaintiff any benefits after concluding that the temporal requirements of § 4.01 had not been satisfied. Plaintiff requested that the Board review the decision and the Board sustained its denial.

Plaintiff thereafter filed a Complaint in New York State Supreme Court asserting four causes of action against Defendants. The Complaint alleged breach of contract, conversion, unjust enrichment, and breach of fiduciary duty. On September 18, 1998, Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441, stating that the suit was one for civil damages arising under the Employee Retirement Insurance Security Act ("ERISA"), codified at 29 U.S.C. §§ 1001–1461. The Court has jur-

---

1. A complete copy of the text of the plan is annexed to the Defendants' Notice of Motion as the sole exhibit. Page references to the "Plan" refer to that document. A complete copy of the text of the summary plan description is annexed to the Defendants' Reply Brief as the sole exhibit. Page references to the "Summary Plan Description" or "SPD" refer to that document. We consider these documents to be properly before the Court for consideration of this Motion. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

isdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1144.

Defendants filed a Motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 5, 1998, arguing that Plaintiff lacks standing to bring this suit, that Plaintiff's causes of action are premised on state law and therefore preempted by ERISA, and that Plaintiff has otherwise failed to state a claim on which relief may be granted. The Court heard oral argument on the Motion on December 10, 1998, and reserved decision, at which time the Motion became fully submitted.

## III. DISCUSSION

On a motion to dismiss for failure to state a claim upon which relief may be granted, *see* Fed.R.Civ.P. 12(b)(6), we must "construe in plaintiff['s] favor factual allegations in the complaint.... Dismissal of the complaint is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir.1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)) (citation omitted). Defendants make three arguments in support of their Motion.

### A. Standing

■ Defendants first contend that Plaintiff lacks standing to bring this lawsuit. The Supreme Court has explained the standing doctrine as evincing an understanding that "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In order to have standing, a plaintiff must allege that she has suffered a concrete injury that is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 751, 104 S.Ct. 3315.

Defendants argue that Plaintiff lacks standing because the fiduciary responsibilities of the Plan run only to participants and beneficiaries, the plan clearly explains that people in Plaintiff's position are not beneficiaries, and that the Plan is in conformity with applicable law. (*See* Def's Mem. at 7.) Defendants' argument unnecessarily conflates this suit's justiciability under Article III with its merits under ERISA.

■ ERISA's principle purpose is to protect plan participants and their beneficiaries. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); 29 U.S.C.A. § 1001(b) (West 1999); *see also Boggs v. Boggs*, 520 U.S. 833, 845–46, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). Section 1132 of Title 29 states that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a) (West 1999). The word " 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* at § 1002(8). The text of Title 29 therefore affords a right of action to a named beneficiary who may have benefits due to her.

This suit is not analogous to *Crawford v. Roane*, 53 F.3d 750, 754 (6th Cir.1995), the only case cited by Defendants that directly addresses standing under ERISA. *Crawford* involved a pension plan's decision to pay all of the benefits due to a deceased doctor to the doctor's wife, rather than to his children. The children were not named as beneficiaries in the plan and the Sixth Circuit affirmed the district court's decision to dismiss the children's claim for lack of standing. *Id.* at 754–55. The court rejected the argument that anyone who claims to be a beneficiary automatically has standing under ERISA, "hold[ing] that

one is a 'beneficiary' under § 1002(8) only if he has a reasonable or colorable claim for benefits under an ERISA plan." *Id.* at 754.

Here, there is no dispute that Mr. Castagna named Plaintiff as a beneficiary and intended to have the Plan pay any remaining benefits to her. Moreover, and as we discuss in greater depth below, the text of the Plan does not lead to the inescapable conclusion that Plaintiff is not entitled to any damages. In light of these circumstances, Plaintiff has plainly stated a "reasonable" or "colorable" claim to benefits sufficient to satisfy Article III's requirement that the Court adjudicate only a discrete case or controversy. We therefore turn to the merits.

### B. Preemption

Defendants contend that ERISA preempts all four of Plaintiff's causes of action. Plaintiff concedes this preemption as to the first three causes of action: breach of contract, conversion, and unjust enrichment. (*See* Pl's Mem. at 2.) In light of Plaintiff's acquiescence, we grant Defendants' Motion to Dismiss the first three claims.

■ Plaintiff contends that her fourth cause of action, that for breach of fiduciary duty, is not preempted. There can be little question that ERISA expressly contemplates a cause of action for breach of fiduciary duty owing to a beneficiary. *See* 29 U.S.C.A. § 1104(a) (West 1999) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan...."); *Estate of Becker v. Eastman Kodak Co.,* 120 F.3d 5, 7–8 (2d Cir.1997). We therefore conclude that ERISA does not preempt Plaintiff's fourth cause of action.

### C. Legal Sufficiency of Plaintiff's Breach of Fiduciary Duty Claim

Defendants argue that Plaintiff's claim for breach of fiduciary duty is nonetheless properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The essence of Defendants' argument is that the Plan and the Summary Plan Description ("SPD") clearly explain each of the following: (1) the joint and survivor annuity described in Article 3 is available only to married participants and their spouses; (2) the optional plans described in Article 4 do not pay benefits until, at a minimum, one year after election and ninety days after ratification; (3) the death of an unmarried participant prior to commencement of Plan payments precludes subsequent payments to a non-spousal beneficiary. Our concern rests primarily with the third assertion.

Plaintiff focuses on Plan § 4.03, "Payment After Participant's Death," which describes what will happen "[i]f a Participant dies before payment of his Retirement Payments begin." The provision states "the total Retirement Payments must be distributed in full within five (5) years from the date of the Participant's death; provided, however, than any portion of such Retirement Payments payable to a surviving Spouse or Beneficiary may be distributed over the life of such surviving Spouse or Beneficiary." (Plan § 4.03, at 27.) Defendants characterize Plaintiff's reliance on § 4.03 as "[m]isplaced" and state that § 4.03 "must be read together with Plan Section 3.02, which provides for a spousal death benefit 'if an active Participant or terminated Vested Participant dies after having attained a vested interest in the Plan after attaining his Earliest Retirement Date but prior to Retirement Payments commencing.'" (Def's Reply at 8.)

. We find Defendants' proffered construction of § 4.03—that it applies only as a limit on § 3.02—unsatisfying. First, Defendants do not explain why Article 4 of the Plan, one devoted entirely to the description of optional benefit plans, would con-

tain a restriction that operates solely to modify the joint and survivor annuity detailed in Article 3. Second, and more importantly, Defendants' interpretation of § 4.03 is belied by that section's inclusion of language referring to both spouses *and* beneficiaries. Article 3 refers exclusively to spouses, presumably because only married participants may opt for the Article 3 joint and survivor annuity. Because § 4.03 refers to both spouses and beneficiaries, one could—and perhaps should—reasonably assume that there are instances in which a non-spousal beneficiary would be entitled to benefits pursuant to an optional plan detailed in Article 4 even if the participant died prior to commencement.

We also note that SPD's explanation of Mr. Castagna's guaranteed 120–month annuity does not conclusively dispose of this matter. The SPD describes the optional plan as follows:

> If you wish, you may elect to receive a retirement payment which is payable for your lifetime but guaranteed for 120 months. If you die before receiving the 120 payments, your designated beneficiary will receive the same monthly payment as you had been receiving for the remainder of the 120 payments.

(SPD at 26.) Although one can infer from the "same monthly payment" language that a spouse will not receive benefits if the participant had not yet received any, we believe that the text, taken as whole, does little to indicate in simple language that death prior to commencement results in total forfeiture. In light of the fact that the 120 "guaranteed" payments are not always guaranteed, the SPD's text plainly leaves room for differing interpretations. (*See also* Plan § 4.01(c)(2), at 26 (characterizing the 120 payments as "guaranteed").)

Defendants point to another section of the SPD as definitively demonstrating the clear import of death prior to commencement:

## IF YOU DIE BEFORE YOU START TO RECEIVE PAYMENTS

### Before You are Eligible for Retirement Benefits

If you are still working for the Company or you have terminated employment, and you die after having earned a non-forfeitable (vested) right to your pension benefit but before you are eligible to receive retirement benefits, your surviving spouse will be entitled, to receive a survivor's benefit. This benefit will be payable monthly for the life of your spouse starting on the first day of the month after your death, but not before the date you would have become eligible to receive retirement benefits. Your spouse must consent to the immediate retirement payment if it is to begin before your normal retirement date and the value of the survivor benefits exceeds $3,500. The amount of the survivor's benefit will be equal to one-half of the monthly benefit you would have received if you retired on the day of your death (but not before the date that you would have been eligible for early retirement benefits), started receiving a pension benefit under the qualified joint and survivor annuity, and died the day after you retired.

(SPD at 29.) This description does not mention payment of benefits under an optional plan to a non-spousal beneficiary but instead addresses only Article 3 joint and survivor annuities. At oral argument, Defendants urged that a reader should take the absence of any discussion of Article 4 plans as proof by negative inference that a non-spousal beneficiary may not recover any benefits if the participant dies prior to commencement. (*See* Tr. Oral Arg. at 6–7 (stating that a participant should assume the absence of recovery for a non-spousal beneficiary due to "the omission of any other reference or circumstance or benefit that entitles" such a beneficiary to recover).) We reject Defendants' argument that this negative inference clearly informs

participants that pre-commencement death eliminates Article 4 benefits.

Although the above analysis does not ultimately answer the question of whether Plaintiff has properly stated a claim for breach of fiduciary duty, we believe it informs the decision we reach. Both the Plan and the SPD could fail to apprise a participant of the impact of pre-commencement death on non-spousal benefits. In light of the inconclusive nature of the meaning of certain Plan and SPD provisions, any representations made to Mr. Castagna regarding plan selection take on increased importance. In particular, any statements made by Defendants' personnel addressing Plaintiff's ability to recover benefits as a *de facto* spouse, or as a non-spousal beneficiary even if Mr. Castagna died pre-commencement, are of paramount relevance.

Plaintiff has attempted to articulate the breach of fiduciary duty legal theory and to plead the requisite elements of that cause of action, but the present Complaint fails to include all of the necessary allegations. The Complaint neither details the representations Defendants' personnel allegedly made to Mr. Castanga at the time of his election, (*see* Tr. Oral Arg. at 20–21), nor makes clear that Plaintiff's theory of recovery rests solely on the Plan and SPD text, *i.e.* that these documents' inherent lack of clarity gives rise to an affirmative duty to warn unmarried participants about the risk of forfeiture. *See generally Estate of Becker v. Eastman Kodak Co.,* 120 F.3d 5 (2d Cir.1997). In light of the foregoing, we believe Plaintiff should be afforded an opportunity to amend her Complaint to attempt to state a proper claim for breach of fiduciary duty. We therefore dismiss Count 4 but grant Plaintiff thirty days to file an Amended Complaint reasserting that cause of action.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is granted and the Complaint is dismissed. Plaintiff shall have thirty days to file an Amended Complaint reasserting a cause of action for breach of fiduciary duty.

The Clerk of the Court is informed that this case remains open.

SO ORDERED.