COGAN, District Judge,
dissenting:
This is a case about a company making multiple misrepresentations and omissions to repeated inquiries by one of the plan’s beneficiaries, Dr. Diana Bell, regarding its ERISA regulated retirement plan. Because I conclude that Pfizer was acting in a fiduciary capacity when it made those misrepresentations and omissions, I dissent. I express no view on whether Pfizer’s misrepresentations and omissions were material, and whether Bell reasonably relied on them to her detriment, as I believe the district court should address these issues in the first instance. I would therefore remand to the district court for that purpose.
*80 This is a unique case. Pfizer has a special provision in its Retirement Annuity Plan (“PRAP”) — Section 4k. This provision allows beneficiaries to end their employment before attaining retirement status and still receive annuity benefits. For individuals like Dr. Bell, understanding Section 4k is critical because in Pfizer’s unusual scheme, it determines whether one qualifies for the non-ERISA Stock Incentive Plan (“SIP”). That is, Bell had to understand the difference between ending her employment under Sections 4a, 4b or 4d and ending it under 4k. What she sought to find out was whether Section 4k constituted a form of retirement. Pfizer, mistakenly, led her to believe that it was.
The majority finds it significant — indeed determinative — that Bell asked Pfizer about Section 4k not because she was confused about her eligibility, but because the meaning of this provision bore on her rights under the SIP. The majority reasons that because Bell knew for which PRAP section she qualified, Pfizer’s fiduciary duty was at its end. It holds that an unintentional misrepresentation made by a company interpreting a provision of its retirement plan, is not a misrepresentation of the plan within the meaning of ERISA. In reaching this conclusion, the majority adds a new layer of analysis to an ERISA challenge, which focuses on a beneficiary’s reasons for requesting information about a retirement plan. I find no support for this reading of the statute.
To begin with, I disagree with the district court’s finding, which the majority adopts, that Pfizer’s misrepresentations and omissions relied upon by Bell, “related solely to the SIP, and, consequently, could not support an ERISA breach of fiduciary duty.” And I disagree with the majority’s related premise that only one misstatement could have misled Bell — the one made by Gomez in 2003 when she sent Bell the stock option summary, identifying Bell as “retirement eligible” and discussing Bell’s stock option rights based on this classification. That was certainly one misrepresentation but there were others, including omissions regarding Bell’s eligibility to retire under the PRAP. For instance, the May 6, 2003 letter to Bell from Peggy McGee, retirement counselor, enclosing her Retirement Kit, referred to Bell as an “employee eligible to retire under the [PRAP].” This statement was clearly incorrect; the PRAP itself defines “retire” or “retirement” as “the termination of service ... after meeting the requirements of Section 4a, b, or d,” and there is no dispute that Bell did not meet the requirements of any of these sections.
Additionally, the fact that the company’s personnel database initially listed Bell as “retired,” and that her status was not changed to “terminated” until after August 2003, further demonstrates the initial confusion within the company as to Bell’s retirement status. An August 19, 2003 email chain originating between Michaeline Von Drathen and McGee, flagging a potential error by the retirement hotline in processing Bell’s retirement inquiry, and culminating in a Pfizer employee, Deb Alexander’s clear statement to McGee and Gerónimo Colon (Pfizer’s manager of PRAP Administration) that Bell was “NOT eligible for retirement ... the Retirement status in PeopleSoft [is] not correct,” further supports the conclusion that Pfizer’s retirement counselors misrepresented Bell’s eligibility for retirement both internally and to Bell.
In addition to these affirmative misrepresentations, the record also contains evidence of omissions regarding Bell’s eligibility to retire under the PRAP, which the district court did not address and the majority overlooks. For example, the record reflects that Sahni and Malik, employees *81 in Pfizer’s HR and pension benefits administration departments, knew that Bell planned to take “retirement at age 50,” but never told Bell that her plan was not actually considered “retirement” under the PRAP. Likewise, Corbett, an HR manager, knew that Bell intended to retire before age 55; while Corbett advised her that she was not eligible for medical benefits prior to age 55, she did not advise her that neither was she eligible for “retirement” as the PRAP defined it. Bell also explicitly told McGee, a person designated by Pfizer as a retirement counselor whose job it was to field retirement questions for its employees, that she intended to leave the company prior to age 55 and take the pre-1994 benefits. Not only did McGee never advise Bell that she was not eligible to retire (as McGee testified was her normal practice when an ineligible employee asked for retirement information), she entirely failed to answer one of Bell’s most specific questions about whether eligibility for the pre-1994 benefit qualified her as “retired” under the PRAP in the sense that she could retain favorable treatment of her stock options. These omissions all concern Bell’s eligibility to retire under the PRAP; their absence from the district court’s factual analysis further demonstrates the insufficiency of its analysis.
The majority’s analysis begins by observing that Pfizer’s employees use the terms “retire” and “retirement” correctly in the colloquial sense (referring to Bell’s leaving the company), and that Bell used the words loosely herself. It also notes that “Bell clearly understood that Sections 4a, b, and d did not apply to her.” I find these observations irrelevant given the fiduciary’s duty to provide “full and accurate information ... regarding the administration of the plan,” In re Long Island Lighting Co., 129 F.3d 268, 271 (2d Cir.1997), including “complete and accurate information about ... retirement options.” Estate of Becker v. Eastman Kodak Co., 120 F.3d 5, 10 (2d Cir.1997); see also, Switzer v. Wal-Mart Stores, Inc., 52 F.3d 1294, 1299 (5th Cir.1995); Electro-Mechanical Corp. v. Ogan, 9 F.3d 445, 451 (6th Cir.1993); Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 991 (7th Cir.1993); Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir.1993); Eddy v. Colonial Life Ins. Co., 919 F.2d 747, 750 (D.C.Cir.1990). First, there is no safe harbor under ERISA allowing for the ascription of colloquial meaning as opposed to proper definition of plan terms. Second, there is nothing in the statute or the caselaw to suggest that a fiduciary’s level of accuracy should be calibrated to the beneficiary’s remarks or knowledge; the meaning of “complete and accurate” does not change based on the beneficiary’s state of mind. Whether Pfizer’s statements were material or whether Bell relied on them to her detriment — perhaps because she had sufficient information, expertise, and opportunity to avoid the misunderstanding — are not questions before this court and are properly decided on remand.
The thrust of the majority’s holding is that the ERISA fiduciary duty does not extend to “unintentional misstatements regarding collateral, non-ERISA plan consequences of a retirement decision.”[1] In reaching this conclusion, the majority rests on the language of the statute and the “two-hats” doctrine, which allows employers to escape fiduciary status when they are not acting as PRAP administrators, and instead conduct business that is not regulated by ERISA.
I do not see how a fiduciary is not discharging its duties “with respect to a *82 plan,” 29 U.S.C. § 1104, when it is interpreting — or misinterpreting — key terms in its provisions. That those misrepresentations and omissions may have non-ERISA consequences does not foreclose liability for breach of fiduciary duty. See e.g., Farr v. U.S. West Comme’ns, Inc., 151 F.3d 908, 914-15 (9th Cir.1998) (finding a violation of ERISA’s fiduciary duty for failing to advise a potential retiree of the tax consequences of an early retirement plan), amended, 179 F.3d 1252 (9th Cir.1999).
Nor do I agree that the two-hats doctrine saves Pfizer from liability. The majority bases this part of its holding on the finding that Gomez, whom “McGee caused to act on an incorrect assumption about Bell’s [retirement] status,” was not acting as a PRAP administrator. Determining whether an employer acted as plan administrator requires a context-specific inquiry into (1) the factual circumstances in which the employer was acting; (2) whether the activity in which the employer engaged was plan-related; and (3) whether the activity was “engaged in by those who had plan-related authority to do so.” Varity Corp. v. Howe, 516 U.S. 489, 503, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Plan-related activities that may give rise to an employer’s ERISA fiduciary duty include communicating to employees about future plan benefits, Flanigan v. Gen. Elec. Co., 242 F.3d 78, 84 (2d Cir.2001), and “answering beneficiaries’ questions about the meaning of the terms of a plan so that those beneficiaries can more easily obtain the plan’s benefits.” Varity, 516 U.S. at 502-03, 116 S.Ct. 1065.
If a reasonable employee could think that the employer was communicating with her in both its capacity as an employer and its capacity as a plan administrator, the employer can be found to be acting as an ERISA fiduciary. See e.g., Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 65 (2d Cir.2006) (quoting Varity, 516 U.S. at 504-05, 116 S.Ct. 1065). Thus, this court has previously found that the communications between employees and benefits counselors designated by the employer to give plan advice can give rise to an ERISA fiduciary duty. See Becker, 120 F.3d at 10 (finding a breach of ERISA fiduciary duty based in part on misrepresentations and omissions made by a benefits counselor); see also Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir.1993) (noting an employer cannot avoid fiduciary liability by walling off “those employees on whom plan participants reasonably rely for important information and guidance about retirement”). It seems to me that if a plan fiduciary wants to wear two hats, it is incumbent upon him to make it clear to beneficiaries which hat he is wearing when he gives advice, especially when both hats have common features.
Because Pfizer’s misrepresentations and omissions concerned Bell’s eligibility to retire under the ERISA-governed PRAP, the interactions between Bell and company employees concerning the PRAP gave rise to a fiduciary duty if the Pfizer employees were acting as PRAP administrators, or if Bell could reasonably have perceived them to be acting in such a capacity. I would find that Pfizer employees acted as PRAP administrators for both reasons. In contrast to the “ministerial functions” that do not implicate an entity’s fiduciary duties under the statute and that the district court in this case found Pfizer employees to have been performing, the majority of the PRAP administrators and retirement counselors with whom Bell interacted gave detailed advice in response to her specific benefits-related inquiries. The context-specific nature of these interactions removes them from the realm of the mechanical or ministerial, and makes them administrative in nature. See e.g., Varity, 516 *83 U.S. at 502-03, 116 S.Ct. 1065 (noting that answering beneficiaries’ questions about the meaning of plan terms to help beneficiaries obtain plan benefits is one of the functions of a fiduciary).
And Bell could reasonably have concluded that she was communicating with Pfizer-the-PRAP-administrator, not Pfizer-the-employer, when she made her retirement eligibility inquiries. She originally initiated contact with Pfizer’s HR department after receiving a pamphlet from Pfizer advising her that its “retirement counselor can answer all your retirement questions.” Likewise, when Bell ultimately made her decision to retire, she called Pfizer’s retirement hotline at the direction of an HR supervisor. McGee, an individual specifically designated by Pfizer as someone who could advise employees about the mechanics of retirement, interacted with Bell as her retirement counsel- or, and answered Bell’s questions about her specific retirement needs. Indeed, the pamphlet Bell originally received in 2001 stated that the “retirement counselor is now your primary source for information about ... provisions of the [PRAP]” and could advise her, among other things, of the “impact of retirement on benefits.” Bell could have reasonably concluded that these employees “had expert knowledge about how their plan worked,” and reasonably could have relied on them for their expertise. Varity, 516 U.S. at 503, 116 S.Ct. 1065; Fischer, 994 F.2d at 135. The employees had the apparent authority to bind Pfizer as fiduciary. See Estate of Dermady v. Eastman Kodak Co., 136 F.Supp.2d 181, 188-89 (W.D.N.Y.2001).
I share the majority’s concern with extending potential liability for ERISA plans. But as I noted earlier, this is a unique case — Pfizer’s stock option plan cross-references its retirement plan, and the retirement plan in turn has an unusual provision that allows collection of benefits without attaining retirement status. Nor am I ready to conclude whether Bell detrimentally relied on material misrepresentations, which the majority correctly points out would be another bar to liability. Thus this is not a case that will expand ERISA beyond congressional intent; it is a case that squarely falls within the language of the statute. The employees who misrepresented parts of the PRAP to Bell were the very ones responsible for discharging the plan. The facts may be unusual, but the misrepresentations are unmistakable. I therefore respectfully dissent.