[608 NYS2d 328]

NEW YORK CITY OFF TRACK BETTING CORPORATION et al., Respondents, v STATE OF NEW YORK RACING AND WAGERING BOARD et al., Appellants.

Third Department, February 24, 1994

## APPEARANCES OF COUNSEL

*G. Oliver Koppell, Attorney-General,* Albany *(Daniel Smirlock* and *Peter G. Crary* of counsel), for State of New York Racing and Wagering Board, appellant.

*Cahill, Gordon & Reindel,* New York City *(William F. Dahill* and *H. Richard Schumacher* of counsel), for New York Racing Association Inc., appellant.

*Bleakley Platt & Schmidt,* White Plains *(Frederick J. Martin* of counsel), for Yonkers Racing Corporation, appellant.

*Nicholas E. Tishler,* Schenectady, and *Philip Stillman,* Schenectady *(Roger L. Dworsky* of counsel), for Capital District Regional Off Track Betting Corporation and others, respondents.

## OPINION OF THE COURT

WHITE, J.

This dispute between defendants and plaintiffs, which are all public benefit corporations that operate 280 off-track betting parlors across the State where they offer pari-mutuel wagering on horse races conducted by defendants New York Racing Association Inc. (hereinafter NYRA) and Yonkers Racing Corporation (hereinafter Yonkers), arises from Racing, Pari-Mutuel Wagering and Breeding Law § 523 (1). This statute provides for the creation of common pari-mutuel betting pools for the calculation of odds and the determination of payouts by requiring the combination of all off-track wagers with on-track wagers. This is accomplished by plaintiffs transmitting information regarding wagers made on a particular race at their parlors to the site of the on-track wagering computer prior to the start of that race (9 NYCRR 5204.15 [a]). For various reasons, on occasion all of the wagers from plaintiffs are not included in the common pool, creating what is termed a "missed pool". When this happens, plaintiffs, in effect, "book" the wager themselves because they keep the proceeds if the wager was a loser and pay the State-wide pool price if the bet was a winner. The general effect of this is to reduce the size of the common pool and the payouts to the winning bettors and to permit plaintiffs to retain the losing bettors' wagers which should have been paid to the successful

bettors, thereby achieving "gambling" gains and creating what is termed a "positive" missed pool.[1]

To solve this problem, defendant State of New York Racing and Wagering Board (hereinafter the Board) promulgated a regulation, effective August 1, 1983, which imposed on plaintiffs the obligation to return to later common pools the gains they garnered from positive missed pools (9 NYCRR 5204.15 [c] [1]). This regulation was not fully implemented until 1991 when the technology to enable the return of missed pool funds to subsequent pools was in place. By directive dated October 1991, the Board ordered plaintiffs to make available $1,416,646 in missed pool moneys that had accumulated from the date of the promulgation of the regulation through the end of 1990 so that it could be added to the pools for races to be run on October 26, 1991.

Plaintiffs commenced this action on October 18, 1991 alleging, *inter alia,* that the Board did not have the authority or power to promulgate either the regulation or the October 1991 directive and that their implementation will result in the unconstitutional payment of public funds to private individuals. Following the purported service of plaintiffs' second amended and supplemental complaint adding a third cause of action against NYRA and Yonkers, defendants sought summary judgment on the ground, *inter alia,* that plaintiffs' complaint was barred by the Statute of Limitations *(see,* CPLR 217). Plaintiffs responded by cross-moving for summary judgment on their first two causes of action and also sought dismissal of the counterclaims advanced by NYRA and Yonkers wherein they sought an injunction directing plaintiffs to comply with the Board's October 8, 1991 directive.

Supreme Court denied defendants' motions, finding that the complaint was not barred by the Statute of Limitations; denied plaintiffs' cross motion for summary judgment, except that portion seeking a dismissal of the counterclaims; granted leave to plaintiffs to serve nunc pro tunc their second amended and supplemental complaint; and severed plaintiffs' third cause of action. Although it denied plaintiffs' cross motion, Supreme Court did issue a preliminary injunction enjoining the Board from enforcing its October 8, 1991 directive predicated upon its finding that the regulation and directive were vague and, therefore, not valid. After the issuance of

1. This is fully illustrated in Supreme Court's opinion (157 Misc 2d 524, 531-532).

the decision, plaintiffs moved to amend their complaint nunc pro tunc to assert a claim for a setoff. Defendants opposed this motion claiming prejudice and cross-moved for reconsideration. Supreme Court granted plaintiffs' motion and denied the cross motions. Defendants then took these appeals.[2]

The initial issue to be resolved is whether this action is barred by the four-month Statute of Limitations. This determination is a two-step process. First, it must be ascertained what administrative action plaintiffs are challenging and then it must be determined when that action became final and binding upon them (see, Chase v Board of Educ., 188 AD2d 192, 195; Matter of Monteiro v Town of Colonie, 158 AD2d 246, 249). In this instance, we need only address the second point as it is clear that the focus of plaintiffs' challenge is the promulgation of 9 NYCRR 5204.15 (c) (1).

Administrative action becomes final and binding when it has impact upon a party and it is clear that the party is aggrieved thereby (see, New York State Assn. of Counties v Axelrod, 78 NY2d 158, 165). Here, in May 1983, the Board published the challenged regulation in the State Register for comment. All six plaintiffs opposed it and two submitted letter comments to the Board elaborating on their opposition. Due to plaintiffs' further protests, the effective date of the regulation was deferred from July 1, 1983 to August 1, 1983. On July 28, 1983, the Board advised plaintiffs that, pending receipt of further instructions from it and the Department of Taxation and Finance regarding the addition of missed pools to subsequent pools, they were required to maintain a running total on all missed pools, by track, by pool and by region. The record reveals that they have done so since the promulgation of the regulation.

From these facts, it is evident that plaintiffs understood the regulation's consequences as of August 1, 1983 and were able to accurately assess its impact. The Board's October 8, 1991 directive did not affect the impact upon plaintiffs for the purpose of the Statute of Limitations as it was simply an incidental measure employed to effectuate the regulation (see, Matter of Abrams v Public Serv. Commn., 96 AD2d 701, affd on mem below 61 NY2d 718). Therefore, even if this proceeding is deemed a declaratory judgment action, plaintiffs' first

---

2. We deem NYRA and Yonkers to have abandoned their appeal insofar as the dismissal of the counterclaims is concerned as they have not presented any arguments relating to this issue on appeal.

two causes of action attacking the regulation are barred by the Statute of Limitations because this action was commenced more than six years after August 1, 1983, the effective date of 9 NYCRR 5204.15 (c) (1) *(see,* CPLR 213 [1]). Hence, Supreme Court erred in denying defendants' motions for summary judgment dismissing the first two causes of action.

In their third cause of action plaintiffs allege that the delay in transmitting their wagers was .caused by the failure of NYRA and Yonkers to have adequate computers and properly trained personnel. They therefore seek reimbursement from these defendants for any missed pool amounts they will have to pay into subsequent common pools. 9 NYCRR 5204.15 (c) (1) and (2) provide that the funds that plaintiffs will restore to the common pool represent gains they obtained from "positive" missed pools, and the losses they incurred in "negative" missed pools shall not be an offset. There is an exception in 9 NYCRR 5204.15 (c) (2), however, which states that any corporation may independently seek recovery of such liability from any party who may be responsible therefor, and it is this exception upon which plaintiffs' third cause of action is predicated. We concur with Supreme Court's decision to sever this cause of action as the present state of the record precludes an informed determination of either its merits or the applicability of the affirmative defense of the Statute of Limitations.

MIKOLL, J. P., MERCURE, CREW III and YESAWICH JR., JJ., concur.

Ordered that the orders and judgment are modified, on the law, without costs, by reversing so much thereof as found the challenged regulations to be invalid and denied defendants' motions for summary judgment dismissing the first and second causes of action in the complaint; motion granted to that extent, said causes of action are dismissed and preliminary injunction is vacated; and, as so modified, affirmed.