■ In the Matter of the NEW YORK STATE RADIOLOGICAL SOCIETY, INC., et al., Appellants, v BRIAN J. WING, as Commissioner of Social Services of the State of New York, et al., Respondents. [666 NYS2d 285] —White, J. Appeal from a judgment of the Supreme Court (Harris, J.), entered September 5, 1996 in Albany County, which, in a proceeding pursuant to CPLR article 78, granted respondents' motion to dismiss the petition as time barred.

Petitioners commenced this CPLR article 78 proceeding on behalf of their members who were Medicare and Medicaid providers but who were not members of the Medical Society of the State of New York (hereinafter MSSNY) between January 1, 1987 and December 21, 1995. As is well known, Medicare is a Federally funded and administered medical insurance plan for people who are 65 years of age or older and certain disabled individuals (42 USC §§ 1395-1395ccc), while Medicaid is a joint Federal and State-funded system that subsidizes medical care for the needy (42 USC § 1396 *et seq.*). Medicare consists of two parts: part A, which provides inpatient hospital insurance (42 USC §§ 1395c—1395i-4), and part B, under which Medicare-eligible persons pay a premium for supplementary insurance for medical services not covered under part A (42 USC §§ 1395j—1395w-4 [j]). Where there is part B coverage, the Federal government pays 80% of the "reasonable costs" of the covered services with the remaining 20% paid by the Medicare patient (42 USC § 1395*l*). To assist the elderly poor, known as "crossovers", in obtaining part B coverage, the Medicare Act provides that the Federal government will provide funding to States that agree to pay part B premiums on behalf of crossovers (42 USC § 1395v). New York agreed to do so, and

prior to January 1, 1987 paid the premiums and the 20% of the reasonable costs that Medicare did not pay.

Effective January 1, 1987, New York enacted the "crossover" regulation (18 NYCRR former 360-7.7, originally codified as 18 NYCRR former 360.10 [b] [1]), under which it would no longer pay Medicaid providers the 20% of their reasonable costs not paid by Medicare except in limited circumstances. In July 1987, the New York City Health and Hospitals Corporation (hereinafter HHC) and MSSNY commenced a Federal court action that ultimately resulted in a judgment in their favor, holding that the crossover regulation violated the Medicare and Medicaid Acts and that HHC and MSSNY were entitled to recover 100% of their reasonable costs and charges (see, New York City Health & Hosps. Corp. v Perales, 954 F2d 854, cert denied 506 US 972).

After entry of the judgment in the Federal action, respondents (hereinafter collectively referred to as the Department) mailed a letter to all Medicaid providers on July 17, 1992 informing them that payment would be made for all crossover claims for services rendered on or after June 3, 1992, the effective date of the Federal court judgment. Thereafter, HHC and MSSNY commenced timely actions for judgments declaring the Department's refusal to pay crossover claims for services provided prior to June 3, 1992 to be unlawful. On December 21, 1995, the Court of Appeals reinstated Supreme Court's judgment ordering full payment of crossover claims for services rendered between January 1, 1987 and June 2, 1992 (see, New York City Health & Hosps. Corp. v Bane, 87 NY2d 399, 405, 408). By letter dated February 6, 1996, the Department limited the Court of Appeals' holding to physicians who were members of MSSNY between January 1, 1987 and December 21, 1995.

Petitioners commenced this action on April 11, 1996 seeking a judgment mandating, inter alia, the Department to include their non-MSSNY members in its implementation plan for the reimbursement of crossover claims for services provided between January 1, 1987 and June 2, 1992. Instead of answering, the Department moved to dismiss the petition as being barred by the four-month Statute of Limitations (see, CPLR 217 [1]). Supreme Court granted the motion, prompting this appeal.

Supreme Court's determination was premised upon the Department's July 17, 1992 letter to all Medicaid providers. Petitioners contend that, in the absence of evidentiary proof of mailing, Supreme Court should not have assumed that this letter had been mailed to all of their non-MSSNY members. In

consideration of the fact that this was an informational letter without any due process implications that was delivered by means of a mass mailing, the Department is entitled to the presumption of regularity of procedures which shifts the burden of going forward to the party claiming that normal procedures were not followed (see, *Dougherty v City of Rye*, 63 NY2d 989, 991; *see also*, 4 Bender, New York Evidence § 11.23 [1]). As petitioners offered no such evidence, they have not sustained their argument.

It is well settled that the four-month Statute of Limitations commences to run when an aggrieved party is notified of an administrative determination that is unambiguous and certain in its effect (see, *Matter of Edmead v McGuire*, 67 NY2d 714, 716; *Matter of Hunt Bros. Contrs. v Glennon*, 214 AD2d 817, 819). Petitioners claim that the Department's July 17, 1992 letter was nonconclusive because the Department did not expressly state that it would not pay for services rendered prior to June 3, 1992. We disagree because the clear import of the clause "on or after June 3, 1992" is to exclude matters occurring prior to that date. Moreover, contrary to petitioners' assertion, the Department's stated intention to comply with the Federal court judgment did not introduce an element of ambiguity since its repeated references to the June 3, 1992 date leave no doubt that it intended to apply the judgment prospectively. Thus, like Supreme Court, we find that this letter constitutes a clear and unambiguous determination and that this action is untimely (see, *New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194, 206). Accordingly, we affirm.

Cardona, P. J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the judgment is affirmed, without costs.