OPINION OF THE COURT
George B. Ceresia, Jr., J.
The respondent Eastern Rensselaer County Solid Waste *46 Authority (Authority) is a public benefit corporation created by the New York State Legislature pursuant to Public Authorities Law § 2050-aa et seq. (L 1989, ch 726). The Authority was created, inter alia, for the purpose of processing and/or disposing of solid waste generated by those towns and villages located within Rensselaer County which elected to become members of the Authority. On November 14, 1989 the Village Board of the Village of Hoosick Falls filed a certificate of election with the New York Secretary of State pursuant to Public Authorities Law § 2050-cc (4) to participate in the Authority. Petitioner entered into a service agreement with the Authority in August 1990.
In order to fund its “start-up” expenses the Authority obtained a line of credit from a banking institution known as CoBank, ACB (CoBank). The Authority subsequently borrowed money on the line of credit. CoBank has, for some time now, been seeking repayment of the sums borrowed. As a consequence, in the fall of 1996 the Authority determined that it would need to issue bills to property owners for payment of their pro rata share of expenses for solid waste disposal service. The Authority did not immediately follow up on this decision. On November 20, 1997 the Authority held a public hearing at which it adopted a budget and apparently resolved to issue bills to property owners. In early January 1998 the bills were issued to property owners within the Village of Hoosick Falls.
Petitioner has commenced the above-captioned CPLR article 78 proceeding seeking an order: (1) annulling and invalidating the tax bills; (2) enjoining the Authority from issuing additional tax bills; (3) directing the Authority to account for tax revenues collected to date; and (4) directing the Authority to refund the tax bills collected.
The petition contains two causes of action. In the first, petitioner maintains that the issuance of the tax bills violates the service agreement between the parties. In the second, petitioner contends that the public hearing at which the Authority adopted the formal resolution to issue the tax bills violated the notice provisions contained in Public Authorities Law § 2050-ee (14).
The Authority’s answer contains five affirmative defenses: that the proceeding is barred by the applicable Statute of Limitations; that the court lacks jurisdiction to grant the relief requested; that to the extent that the Village has undertaken *47 in this proceeding to invalidate the bills of parties other than the Village (that is, the bills of all other Village property owners), the proceeding constitutes an invalid and unconstitutional use of public funds; that the petition fails to state a cause of action; and that the Village lacks standing to bring the proceeding on behalf of private property owners.
The Authority takes the position that the Public Authorities Law authorizes it to bill taxpayers directly; and that paragraph 10.4.1 of the parties’ service agreement, the provision upon which the Village relies, has no application to the instant matter. The Authority further contends that it furnished proper notice of the November 20, 1997 budget hearing as required under the Public Authorities Law.
In order to have standing to challenge the action of an administrative agency, the following criteria must be met: (1) the interest asserted must be arguably within the zone of interest to be protected by the statutory or constitutional provisions sought to be enforced; (2) the administrative decision for which review is sought must be shown to have a harmful effect upon the party asserting standing; (3) there must be no clear legislative intent negating review (see, Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 442-443 [1983], citing Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 8-11; see also, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 413; Matter of Kirmayer v State of N. Y. Civ. Serv. Commn., 236 AD2d 705, 706 [3d Dept 1997]). With regard to the second requirement, the aggrieved party must demonstrate “special damage, different in kind and degree from the community generally” (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, supra, at 413; Matter of Kirmayer v State of N. Y. Civ. Serv. Commn., supra, at 706).
The court is of the view that the Village, as a property owner to which a bill for solid waste disposal services was issued by the Authority, has the standing to challenge issuance of the bill. It appears that the Village falls within the zone of interest to be protected; that the Village would in fact be harmed if the bill had been improperly issued; and that there is no clear legislative intent negating review. The court further finds, however, that the Village does not have the authority to bring the proceeding in a representative capacity on behalf of other property owners.
Turning to the Authority’s Statute of Limitations defense, it is well settled that an administrative determination becomes final and binding, and the applicable Statute of Limitations *48 begins to run, when the administrative action has its impact upon a party and it is clear that the party is aggrieved thereby (see, Matter of Edmead v McGuire, 67 NY2d 714, 716; New York City Off Track Betting Corp. v State of N. Y. Racing & Wagering Bd., 196 AD2d 15, 18, lv denied 84 NY2d 804; Matter of Hunt Bros. Contrs. v Glennon, 214 AD2d 817, 818-819 [3d Dept 1995]; Matter of Biondo v New York State Bd. of Parole, 60 NY2d 832, 834; Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352, 357). In other words, the Statute of Limitations does not commence to run until the aggrieved party is notified of an administrative determination that is unambiguous and certain in its effect (see, Matter of Edmead v McGuire, 67 NY2d 714, 716; Matter of Hunt Bros. Contrs. v Glennon, 214 AD2d 817, 819; Matter of New York State Radiological Socy. v Wing, 244 AD2d 823 [3d Dept 1997], lv denied 92 NY2d 802 [1998]). Finality does not occur until the administrative agency has arrived at a definitive position on the issue which inflicts actual concrete injury (see, Matter of Ward v Bennett, 79 NY2d 394, 400).
The notice of petition and petition were filed on March 13, 1998. This was within four months of the November 20, 1997 budget hearing and within four months of the issuance of the bills being challenged. The court finds that the instant proceeding was timely commenced. The court rejects the argument advanced by the Authority that the cause of action accrued on November 1, 1996, the deadline the Authority had fixed to commence issuance of bills to property owners.
The court notes that under Public Authorities Law § 2050-ee (14) the Authority is granted the power to fix and collect rates, rentals, fees and other charges for the use of its facilities or services rendered. “All rates, rentals, fees and other charges * * * shall be a lien upon the real property upon which, or in connection with which, services were provided” (Public Authorities Law § 2050-ee [14]). On or before December 1 of each year, the treasurer of the Authority is directed to prepare and transmit to the respective legislative body of each town[1] a list of properties where the payment of fees is in arrears (Public Authorities Law § 2050-ee [14]). The governing body of the towns “shall levy” such sums against the properties liable in the annual tax rolls (Public Authorities Law § 2050-ee *49 [14]). Such amounts, when collected by the municipalities, shall be paid over to each respective town treasurer, who shall pay the sum over to the treasurer of the Authority (Public Authorities Law § 2050-ee [14]). In the court’s view, the procedure set forth in Public Authorities Law § 2050-ee (14) very clearly contemplates the issuance of bills to property owners. Absent the issuance of bills, there could be no list of delinquent property owners to deliver to the towns for levy in tax bills. The court, accordingly, finds that the Authority had the power to issue the bills in question in conformity with Public Authorities Law § 2050-ee (14).
Turning to the service agreement between the Village and the Authority, the court notes that paragraph 6 recites that the Authority has the right to “establish and collect rates, rents, fees and other charges referred to in [title 13-H of the Public Authorities Law]”. Paragraph 10.4.1 recites in its entirety: “Commencing January 1st of the year first succeeding the calendar year in which the Authority’s Co-composting Facility is completed and operative, the Village of Hoosick Falls shall pay or cause to be paid to the Authority, no later than February 1, the aggregate of (i) the then-current annual tipping fee for the prospective year as determined in accordance with Section 10 hereof; and (ii) any other amounts chargeable to the account of the Village of Hoosick Falls payable pursuant to this Agreement or any other agreements into which the Village of Hoosick Falls may enter from time to time.” Respondent points out that no co-composting facility is currently under construction, let alone completed and in operation. The court finds that even if this provision were construed as a bar to the Authority’s ability to direct bill owners of Village property, this provision of the service agreement is not yet operative or in effect. Accordingly, it does not prohibit the Authority from the direct billing of property owners within the Village.
With respect to notice of the November 20, 1997 public hearing, the court notes that Public Authorities Law § 2050-ee (14) recites in part as follows: “No such rates, rentals, fees and other charges for the use of the facilities of, or service rendered by, the authority shall be established, fixed or revised unless the authority shall have held a public hearing at which the users of the facilities of, or services rendered by, the authority together with the owners of property served or to be served and others interested have had the opportunity to be heard concerning the same. Notice of such public hearing shall be published by the authority at least ten days before the date set *50 therefor in at least one newspaper having a general circulation in each of the towns. Such notice shall set forth the date, time and place of such hearing and shall include a brief description of the matters to be considered at such hearing. A copy of the notice shall be filed in the office of the clerk of each of the towns and shall be available for inspection by the public.” (Emphasis added.) The notice of the November 20, 1997 public hearing recited as follows:
“Notice of Public Hearing for the Eastern Rensselaer County “Solid Waste Management Authority
“please take notice that a public hearing will be held by the Eastern Rensselaer County Solid Waste Management Authority (ERCSWMA) at the Schaghticoke Town Hall, North-line Drive, Schaghticoke, NY on 11/20/97 at 7:30 p.m. for the purpose of receiving and reviewing comments on the budget for the 1998 fiscal year.
“As part of the budget, the ERCSWMA will also establish and fix rates, rentals, fees and other charges to provide revenues for the administration and operation of the ERCSWMA, to pay principal and interest on bonds of the ERCSWMA, and reserves for debt service, depreciation, maintenance and contingencies and any other obligations or indebtedness.
“An ERCSWMA Board meeting will be held immediately following the Public Hearing at the Schaghticoke Town Hall.” The Authority has submitted proof that the notice was published in a newspaper of general circulation within the Village of Hoosick Falls on November 12, 1997 and was filed with the Village Clerk of the Village of Hoosick Falls on November 10, 1997. With respect to the publication, it would appear that publication was not timely.
The court is mindful that in a number of instances it has been held that defective notice, of itself, is not sufficient to invalidate actions taken at a public hearing (see, e.g., Matter of Fine Assocs. v Board of Trustees, 228 AD2d 437 [2d Dept 1996]; Matter of Cellular Tel. Co. v Meyer, 200 AD2d 743; Matter of Baer v Town of Waterford, 186 AD2d 850 [3d Dept 1992]; Fairris v Town of Washington Planning Bd., 167 AD2d 368; Matter of Velez v Board of Appeals, 147 AD2d 648, 649; Matter of Gaona v Town of Huntington Zoning Bd. of Appeals, 106 AD2d 638, 640). Thus, the fact that the notice of the public hearing was defective is not, of itself, fatal.
In addition, the court finds that the text of the public notice (by advising that a public hearing would be held to establish *51 and fix rates, rentals, fees and other charges) fully comported with Public Authorities Law § 2050-ee (14). In the court’s view it was not necessary for the Authority to advise in the public notice that property owners would be issued bills, inasmuch as the power to do so was inherent in the powers of the Authority.
Under all of the circumstances, and inasmuch as the primary objection to the content of the notice of public hearing was with respect to the intention of the Authority to issue bills to Village property owners, the court finds that the failure to notice the public hearing in strict compliance with Public Authorities Law § 2050-ee (14) did not render the public hearing invalid.[2]
The court concludes that the petition must be dismissed and all ancillary relief denied. The court need not address the remaining issues raised by the parties.[3]
Accordingly, it is ordered and adjudged that the petition be and hereby is dismissed.

. Under Public Authorities Law § 2050-bb the term “towns” includes a number of specifically identified towns and villages located within Rensselaer County, including the “[Vlillage of Hoosick” (which the court interprets to mean “Village of Hoosick Falls”).

. The court notes that petitioner does not in this proceeding expressly challenge the adoption by the Authority of fees and rates for solid waste disposal services.

. In a memorandum of law submitted in support of the petition, petitioner contends that had residents of the Village received proper notice that the Authority intended to issue individual bills to property owners for solid waste disposal services, Village residents would have attended the November 20, 1997 public hearing to advance the argument, inter alia, that the issuance of such bills was prohibited by a certain stipulation entered into between the Town of Hoosick and the Authority. The stipulation in question, dated December 6, 1995 and “so-ordered” by the court, was executed to settle an action brought in Supreme Court, Rensselaer County (index No. 176391) by the Town of Hoosick against the Authority. The stipulation recites in part that the Authority would not bill owners of property within the Town. It is asserted that Village property owners would have contended that this provision in the stipulation operated as a bar to the issuance of bills to owners of property within the Village, since the Village is located wholly within the boundaries of the Town. This interpretation of the stipulation is disputed by the respondent. In any event, the court notes that neither cause of action contained in the petition is based upon or even makes any mention of the stipulation. Accordingly, since the issue was not raised in the petition, it is not before the court and, therefore, may not be addressed by the court.