[907 NYS2d 415]

In the Matter of THEODORA Q. BRYANT et al., Petitioners, v
BOARD OF EDUCATION, CHENANGO FORKS CENTRAL SCHOOL
DISTRICT, Respondent.

Supreme Court, Broome County, September 3, 2010

**APPEARANCES OF COUNSEL**

*James R. Sandner* and *James D. Bilik*, Latham, for petition-
ers. *Coughlin & Gerhart, LLP*, Binghamton (*Lars P. Mead* of
counsel), for respondent.

**OPINION OF THE COURT**

PHILLIP R. RUMSEY, J.

Petitioners commenced this CPLR article 78 proceeding seeking to annul respondent's determination to stop reimbursing its retirees for payment of Medicare Part B premiums. Petitioners, who are either retired teachers formerly employed by respondent Chenango Forks Central School District, or spouses of retired teachers, contend that respondent's action violates a statutory moratorium against reducing the health insurance benefits of school district retirees, or the contributions made to obtain such benefits, in the absence of a similar decrease in benefits or contributions for active employees (*see* L 2003, ch 48, amending L 1994, ch 729 [herein moratorium]).[1] By decision, order and judgment dated May 18, 2004, this court granted the petition, annulled the challenged determination, and directed that respondent continue to reimburse petitioners for payment of Medicare Part B premiums (*see Matter of Bryant v Board of Educ. of Chenango Forks Cent. School Dist.*, 4 Misc 3d 423 [2004]). On September 1, 2005, the Appellate Division, Third Department, reversed, finding that the record was insufficient to support judgment for either party, and remitted the proceeding for further development of the record (*see Matter of Bryant v Board of Educ., Chenango Forks Cent. School Dist.*, 21 AD3d 1134 [2005]). The parties now request that the matter be determined based on the additional facts that they submitted by written stipulations in 2009.

All petitioners are 65 years of age or older, and are eligible to receive Medicare benefits, including Part B, which provides coverage for physician and outpatient services. A monthly premium for Part B coverage is deducted from the Social Security benefits payable to an enrolled individual. In 1987 and 1988, in accordance with a collective bargaining agreement, respondent provided health insurance to teachers and eligible retirees through the New York State Government Employees' Health Insurance Program (Empire Plan), which required that eligible individuals enroll in Medicare Part B and that respondent reimburse Part B premiums paid by enrolled individuals. In 1988, the collective bargaining agreement between respondent and the Chenango Forks Teachers Association was amended to replace the Empire Plan with a Blue Cross/Blue Shield Plan (Plan), which does not require that eligible individuals enroll in Medicare; however, it does not cover services that would be provided to a Medicare recipient, even if an eligible in-

---

1. The effective period of the statute has been extended each year, most recently by Laws of 2009 (ch 30), which provided for a sunset date of May 15, 2010.

dividual fails to enroll in Part B. No collective bargaining agreement in effect at the time of, or prior to, respondent's determination required that respondent reimburse participants—whether retirees or active employees—for Part B premiums. Nonetheless, respondent has reimbursed retirees for payment of Part B premiums continuously since at least 1980.

On June 12, 2003, respondent sent a notice to faculty and staff, advising that it would cease reimbursing retirees for Medicare Part B premiums as of July 1, 2003. On June 24, 2003, a similar notice was sent to individuals then receiving Part B reimbursement from respondent—all of whom were retired teachers or spouses of retired teachers. No other change was made in the health insurance benefits provided to active employees or retirees, or in the level of contributions made by respondent toward payment of health insurance premiums under the Plan for either group. When respondent made its determination to cease reimbursement, no active teachers were eligible for Medicare.

The moratorium precludes any diminution in health insurance benefits provided to retirees or their dependents, or contributions made toward the payment of retiree health benefits, "unless a corresponding diminution of benefits or contributions is effected *from the present level during this period* by such district or board from the corresponding group of active employees for such retirees" (L 2003, ch 48, § 1 [emphasis supplied]). To determine whether a modification of benefits or contributions provided to retirees violates the moratorium, the effect of any changes on the retirees must be compared to the effect of any changes to comparable benefits or contributions provided to a corresponding group of active employees—the effect on the employer is not relevant to the determination.

The record now before the court establishes that cessation of reimbursement for Part B premiums constitutes a reduction in respondent's contribution toward health benefits provided to retirees. Specifically, an eligible individual must enroll in Part B to maintain the same level of coverage afforded by the Plan to individuals who are not eligible for Medicare. The cost of maintaining that coverage for retirees had been paid by respondent at all times since at least 1980 as a contribution toward the cost of maintaining their health benefits. On July 1, 2003—the effective date of the challenged determination—the cost of obtaining Part B coverage was $58.70 per month, or $704.40 per

year.[2] Under such circumstances, unilateral discontinuance of Part B premiums plainly constitutes a decrease in contributions made by respondent to provide health benefits to Medicare eligible retirees. Alternatively, respondent's decision to cease reimbursement could indirectly result in a decrease in health benefits for any retirees forced to terminate Medicare Part B enrollment due to an inability to pay the premiums.

By contrast, the record shows no corresponding diminution of benefits afforded under the Plan or contributions during the relevant period for the corresponding group of active employees, here, the active teachers. No active teachers were Medicare eligible or were receiving reimbursement for Part B premiums, and there was no decrease in the contributions made by respondent toward payment of the premiums necessary to provide health insurance to the active teachers under the Plan.[3] Respondent's argument that active teachers are affected by the challenged determination because it impacts their right to receive benefits in the future, i.e., upon becoming Medicare eligible, is misplaced, because it does not reduce contributions made on their behalf *"from the present level during [the same] period"* (L 2003, ch 48, § 1 [emphasis added]; *see also Matter of Baker v Board of Educ.*, 29 AD3d 574 [2006], *lv denied* 7 NY3d 708, 709 [2006];[4] *see generally Matter of Jones v Board of Educ.*

---

**2.** Medicare Part B premiums are adjusted on January 1 each year. By January 1, 2006, the most recent date for which the stipulated facts provide the Part B premium amount, the cost had increased to $88.50 per month, or $1,062 per year.

**3.** As noted in this court's prior decision, order and judgment, the moratorium does not require that the exact same benefit be taken from both groups; thus, a "similar decrease in the amount paid toward the cost of health insurance premiums for active teachers would therefore constitute a 'corresponding diminution,' as contemplated by the statute, and in the absence of such a decrease, the premium subsidy provided to petitioners, and other retirees, cannot be diminished" (*Matter of Bryant*, 4 Misc 3d at 426).

**4.** In *Matter of Baker*—decided only eight months after the appeal in this case was decided—the Appellate Division, Second Department, held that the district's unilateral decision to cease reimbursing retirees for Part B premiums violated the moratorium because there was no indication that the school district had made any corresponding diminution in the health insurance benefits or contributions provided to active employees during the moratorium period. The facts in *Matter of Baker* were nearly identical to the facts presented in this proceeding. Petitioners were retirees or spouses of retirees whom the school district was reimbursing for Medicare Part B premiums as part of continuing health insurance benefits following retirement in accordance with the applicable collective bargaining agreements, although none of the relevant contracts specifically required reimbursement (*see* brief on behalf

*of Watertown City School Dist.*, 30 AD3d 967, 970 [2006] ["during this period" means only the period that the moratorium is in place (which, under the most recent law—Laws of 2009 [ch 30]—ended May 15, 2010)]). Accordingly, respondent's decision to cease reimbursement of Part B premiums violates the moratorium.

The petition must be, and hereby is, granted; the challenged action of respondent (curtailment of its reimbursement of the cost of Medicare Part B premiums to retirees paying such premiums, commencing July 1, 2003) is annulled; and respondent is directed to pay petitioners the amounts of such premiums that would have been so reimbursed, in the absence of the challenged determination.

---

of respondents-appellants, 2005 WL 4013583, *2). On June 16, 2003—four days after the first notice was sent in this proceeding—the school district notified those persons who were either then receiving reimbursement for Medicare Part B premiums, or would soon become Medicare eligible, that it would no longer reimburse them for Part B premiums (*id.* at *3-4). No other change was made, at that time, in health insurance benefits provided or contributions made by the district toward payment of health insurance premiums for either retirees or active employees. There were no individuals in the corresponding group of active employees who were affected by the district's action, inasmuch as none were Medicare eligible, nor would they typically be eligible for Medicare (*id.* at *15).