OPINION OF THE COURT
Ralph A. Boniello, III, J.
Petitioners commenced a special proceeding pursuant to *426 article 78 of the CPLR requesting various relief including that an order be entered adjudging that the actions of the respondents, in diminishing petitioners’ health insurance benefits by placing the petitioners in the “Blue Cross/Blue Shield Forever Blue Medicare PPO 799 Plan” (hereinafter Forever Blue Plan), while failing to effect a corresponding diminution in the active employees’ health insurance benefits/contributions, constitutes a violation of the respondents’ legal obligations under chapter 504, § 1, part B, § 14 of the Laws of 2009 (hereinafter moratorium), and that such actions are arbitrary, capricious and unlawful; annulling the respondents’ refusal to make available to the petitioners the “Blue Cross/Blue Shield Traditional Blue PPO 799 Plan” (hereinafter Traditional Blue Plan); directing the respondents to pay each of the petitioners the amounts, together with interest thereon, that each has incurred and/or will incur by reason of the respondents’ action to the date of respondents’ compliance with the moratorium statute; and directing the respondents to cover the costs and/or provide health insurance coverage that will place the petitioners in the same position that they would have been in but for the actions of the respondents.
Petitioners herein were employed by respondent Niagara Falls City School District and covered by the collective bargaining contract between the District and the Civil Service Employees Association, Inc., Local 100, AFSCME, AFL-CIO (hereinafter CSEA). Further, the petitioners who are now retired are all over the age of 65 and eligible for Medicare. The petitioners allege that respondent District violated the legal obligations under the moratorium statute. Specifically, they allege that there was a unilateral diminution of benefits when the District required that the Medicare-eligible retirees switch from the Traditional Blue Plan to the Forever Blue Plan on July 1, 2011, without a corresponding diminution in benefits for the active employees. In fact, it is undisputed, that at the same time the active employees were placed in the NY-44 Health Benefits Trust Plan which resulted in such employees receiving an increase in their overall benefits.
An examination of the Traditional Blue Plan reveals that there were no copayments required for nearly all medical services that took place in-network. In contrast, the Forever Blue Plan requires copayments for medical services that occur, both in- and out-of-network, and significantly higher copayments for prescription medications. In an attempt to offset the additional out-of-pocket expenses, the District created a medical reimburse *427 ment account for each Medicare eligible employee. However, such account is capped at $600 and the petitioners claim, given their advanced age, that the copayments required under the Forever Blue Plan will likely far exceed the $600 annual medical expense account. Therefore, the petitioners assert that there has been a substantial diminution in health insurance benefits to the retirees or their dependents without a corresponding diminution of benefits or contributions from the active employees. The court agrees (see Matter of Jones v Board of Educ. of Watertown City School Dist., 30 AD3d 967 [4th Dept 2006]; Matter of Bryant v Board of Educ., Chenango Forks Cent. School Dist., 21 AD3d 1134 [3d Dept 2005]). It is important to note that, while in some cases the $600 may be sufficient, it is entirely possible, and indeed probable, that in most cases it will not be enough. As a result, the court finds that the respondents’ actions violated the moratorium statute and that such actions were arbitrary, capricious and unlawful.
Accordingly, the relief requested in the petition is granted in its entirety.