OPINION OF THE COURT
Katherine A. Levine, J.
Plaintiff Elizabeth Rankin-Fulcher commenced this action against her former employer Duane Morris LLP for reimbursement in the amount of $2,756.40 for payments she made to continue coverage under the Duane Morris health insurance plan (plan). Plaintiff claims that the payments were unnecessary and that it was defendant’s duty to inform her, upon her termination, that she was eligible for Medicare, which cost less than continuation coverage under the plan. Defendant moves to dismiss on the ground that it had no duty to provide posttermination notice of her eligibility for Medicare, but that in any event, plaintiff was in fact provided with such notice.
This case raises the issue of whether an administrator of an employee benefit plan sponsored by a law firm, and governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 USC § 1001 et seq., as amended), must notify an employee aged 65 or older, upon termination, that she is eligible for Medicare.
Rankin-Fulcher was employed as a legal assistant from December 2008 until August 29, 2012, when Duane Morris terminated her employment for reasons other than gross misconduct. Plaintiff was 66 years old when she began her employment. As part of her benefits package at Duane Morris, plaintiff had medical insurance coverage with the Oxford Health Plan (NY), a group plan governed by the ERISA. This coverage ended on August 31, 2012.
On September 4, 2012, five days after she was terminated, plaintiff signed a “Severance Agreement and Release” (agreement), which provided she would receive 10 weeks of severance pay in consideration for her release, waiver, and discharge of all claims that she had against defendant at the time of termination, including claims related to her employment with the firm, termination, and unknown claims. The agreement contained plaintiff’s acknowledgment that the firm had ad *304 vised her to consult an attorney prior to signing the agreement. When plaintiff sent the signed agreement to defendant, she included a cover letter requesting that defendant’s benefit manager, Catherine E. Stasky, send her “information regarding COBRA, DM’s pension benefits due me and other benefits/ compensation due to me,” as she was “particularly concerned” that she was “uninsured and uninformed about my COBRA options” since she had been undergoing knee rehabilitation treatments. Plaintiff received 10 weeks of severance pay.
Upon receipt of plaintiffs request, defendant sent plaintiff a “Notice of Right to Elect Continuation Coverage under the Duane Morris LLP Health and Welfare Plan” (COBRA notification), dated September 4, 2012. This notification included the following provisions:
“The maximum amount of continuation coverage available when a second qualifying event occurs is 36 months. Such second qualifying events may include . . . the covered employee’s becoming entitled to Medicare benefits (under Part A, Part B, or both) . . . These events can be a second qualifying event only if they would have caused the qualified beneficiary to lose coverage under the Plan if the first qualifying event had not occurred. You must notify the Plan within 60 days after a second qualifying event occurs if you want to extend you continuation coverage.”
Plaintiff never questioned Stasky as to the meaning of the COBRA notification. She sent defendant an executed “COBRA Continuation Coverage Election Form” on September 13, 2012, to reinstate her health and dental insurance coverage with Oxford, together with her first monthly payment of $918.80, and a letter requesting confirmation that her insurance had been reinstated. Plaintiff continued to pay the monthly dues in October and November of 2012, and Oxford paid medical claims for her during that time.
Plaintiff claims that in December 2012, she discovered that she had been eligible for Medicare at the time her employment terminated and stopped making COBRA payments.[1] In October 2013, plaintiff requested reimbursement from defendant in the amount of $2,756.40 for the COBRA payments that she made “unnecessarily.” Defendant denied her request. Plaintiff *305 contends that “common sense dictates” that defendant had a duty to inform her regarding her Medicare eligibility when she was terminated because had she known that she was eligible for Medicare, she would not have chosen to pay $2,756.40 for continued insurance under COBRA as opposed to the “more affordable Medicare monthly premium.”
Defendant contends that the firm had no duty under ERISA or COBRA to notify plaintiff upon her termination that she was eligible for Medicare, but that in any event, plaintiff “had every reason to believe that she, like any other United States citizen who reaches age 65, understood that she was eligible to enroll in Medicare.” Stasky avers that plaintiff, in particular, should have known that she was eligible for Medicare because the firm mailed to her and other Medicare-eligible employees annual creditable coverage disclosure notices (CCD notices) in 2009, 2010 and 2011, in accordance with 42 CFR 423.56 (c),[2] with a cover letter stating that the “enclosed CCD Notice is being provided to you because you are, or will soon become, a Medicare eligible beneficiary.” Plaintiff replies that she does not recall ever receiving information about Medicare eligibility and that the attached cover letter appears to be an “unaddressed merged letter.”
Stasky further avers that following receipt of plaintiff’s signed form electing COBRA continuation coverage, she sent plaintiff an email dated September 24, 2012, informing her that
“because of the loss of your employer-sponsored coverage, you are now in an eight month special enrollment window period for signing up for Parts A and B of Medicare. COBRA coverage is disregarded for Medicare enrollment purposes. If you wait until after April 30, 2013 to sign up for Parts A and B of Medicare, you may have to pay extra, and may also have to wait a certain period of time before your Medicare coverage takes effect.
‘You can go to www.medicare.gov for more information. You can also sign up for Medicare at www.ssa.gov or by calling 1-800-772-1213.”
*306 Again, plaintiff contends that she does not recall receiving the email.
At the outset, this court notes that defendant provided sufficient information in its COBRA notification dated September 4, 2012, to alert plaintiff that she might be eligible for Medicare. Indeed, the notice listed eligibility for Medicare benefits under parts A and B as a second qualifying event which could affect her continuation coverage under COBRA. Further, given both the “merged letter” that the employer sent out for three years, combined with the email, the court finds that defendant alerted plaintiff about Medicare.
Furthermore, benefits managers of private group health plans covered by ERISA do not have a fiduciary or other statutory or common-law obligation to provide specific notice to employees aged 65 or older upon termination that they are eligible for Medicare as a preferable alternative to continuing their insurance coverage under the group plan. It can reasonably be expected that plaintiff was aware of her entitlement to Medicare, as it is a matter of common knowledge that individuals who have attained age 65 are entitled to health insurance through Medicare. (42 USC § 426 [a]; see Allina Health Servs. v Sebelius, 746 F3d 1102, 1105 [DC Cir 2014] [“Medicare, as is surely well known, is the federal program providing health insurance for all elderly, as well as the disabled”]; see also Matter of New York State Radiological Socy. v Wing, 244 AD2d 823, 823 [3d Dept 1997] [“As is well known, Medicare is a Federally funded and administered medical insurance plan for people who are 65 years of age or older and certain disabled individuals”].)
Nor is there merit to plaintiff’s claim that an employer has a “common sense” duty to inform a former employee regarding her eligibility for Medicare, or that coverage under Medicare makes enrollment for continuation coverage under COBRA superfluous. An employer does not have a duty to train an employee to utilize common sense or to instruct such employee about a fact that should already be known to him or her. (Webre v Azalea Fleet, Inc., 2005 WL 711608, 2005 US Dist LEXIS 4845 [ED La, Mar. 23, 2005, No. Civ.A.-03-1190].) Thus, Duane Morris was not obligated to instruct plaintiff to use common sense regarding her choice between health insurance plans or that she was eligible for Medicare.
Neither ERISA’s disclosure provisions contained in 29 USC §§ 1021-1031 nor the COBRA notice provisions contained in 29 USC § 1166 require administrators to provide posttermination *307 notices to participants aged 65 and above that they are entitled to Medicare. Furthermore, plan administrators have no fiduciary duty under 29 USC § 1104 (a) to provide individualized notice to such participants. The courts have not imposed upon ERISA plan fiduciaries the duty to individually notify participants of the specific impact of the general terms of the plan upon them. (See Griggs v E.I. DuPont de Nemours & Co., 237 F3d 371, 381 [4th Cir 2001] [“ERISA does not impose a general duty requiring ERISA fiduciaries to ascertain on an individual basis whether each beneficiary understands the collateral consequences of his or her particular election”]; Chojnacki v Georgia-Pacific Corp., 108 F3d 810, 818 [7th Cir 1997] [“ERISA does not impose a fiduciary duty to provide individualized notice of the effect a particular event may have on a participant or beneficiary’s eligibility to receive benefits” (internal quotation marks omitted)]; Howard v Gleason Corp., 901 F2d 1154, 1159-1161 [2d Cir 1990] [a correct statement of the beneficiary’s rights, consistent with the summary plan description, satisfied the fiduciary’s disclosure obligations].) It follows that ERISA plan administrators do not have a duty to provide individualized posttermination notice to participants aged 65 and older that they are entitled to Medicare. (See Maxa v John Alden Life Ins. Co., 972 F2d 980, 985-986 [8th Cir 1992] [plan administrator had no duty under ERISA to warn to individually warn “upon their sixty-fifth birthdays, each and all of the members of the plans which it insured that their benefits would be reduced according to the plan’s coordination of benefits provision unless they enrolled in Medicare”].)
However, ERISA does impose a duty upon fiduciaries to respond promptly and adequately and in a way that is not misleading to employee-initiated inquiries regarding the plan and its terms. (Gregg v Transportation Workers of Am. Intl., 343 F3d 833, 847 [6th Cir 2003]; Estate of Becker v Eastman Kodak Co., 120 F3d 5, 8 [2d Cir 1997].) When plaintiff requested information regarding COBRA and other benefits due her and expressed particular concern that she was “uninsured and uninformed about my COBRA options,” defendant, on the same day, sent plaintiff information regarding her right to continue her health care coverage in the plan. The court finds that defendant’s response was sufficient; it was prompt and not misleading. Therefore, the plan administrator had no further fiduciary duty to notify plaintiff that she was eligible for Medicare or that Medicare would be less expensive than continuing coverage under her current plan.
*308 Finally, the obligation to inform individuals of their eligibility for Medicare rests upon the United States Department of Health and Human Services (HHS). (See e.g. 42 USC §§ 1395b-1, 1395b-2, 1395b-3, 1395b-4, 1395b-7, 1395r, 1395u [a].) Pursuant to title XVIII of the Social Security Act (42 USC ch 7), it is the statutory duty of the Secretary of HHS (Secretary) to provide for distribution of notice to individuals eligible for Medicare an explanation of health insurance benefits available under Medicare. (42 USC § 1395b-2.) The Social Security Act further requires that such notice be mailed annually to individuals entitled to benefits under Medicare part A (42 USC § 1395c et seq.)[3] or part B (42 USC § 1395j et seq.).[4] Further, the Secretary maintains a health insurance advisory service program (beneficiary assistance program) to assist Medicare-eligible individuals with the receipt of services under the Medicare. (42 USC § 1395b-3 [a].)
The well established “regularity doctrine” creates a presumption that public officers properly carry out their official duties, provided there is no evidence to the contrary. (See People v Dominique, 90 NY2d 880, 881 [1997] [“(T)he law further presumes that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done,” and “(s)ubstantial evidence is necessary to overcome that presumption”]; People v Mills, 2014 NY Slip Op 33381[U], *6 [Sup Ct, Kings County 2014] [“The presumption of regularity may be overcome only by affirmative proof sufficient to rebut its effectiveness; neither conjecture, inference, nor coincidence can be substituted for such affirmative proof or refute the force of the presumption”].) Plaintiff does not claim that the government failed to provide her with notice regarding Medicare. Accordingly, this court presumes that HHS carried out its duty to provide notice to plaintiff regarding her eligibility for and the benefits available under Medicare.
In light of the above, defendant’s motion to dismiss is granted.

. It is unknown how plaintiff discovered that she was entitled to Medicare.

. The latter regulation requires entities whose insurance policies include prescription drug coverage to notify policyholders who are eligible for Medicare whether their prescription drug coverage is “creditable coverage,” meaning that the coverage is expected to pay on average as much as the standard Medicare prescription drug coverage.

. Medicare part A provides basic protection against the costs of hospital, related post-hospital, home health services, and hospice care. (42 USC § 1395c.)

. Medicare part B (otherwise known as the “Supplementary Medical Insurance Benefits for Aged and Disabled”) is a voluntary program offering supplemental insurance coverage for those persons already enrolled in the Medicare part A program.